The opinion of the court was delivered by
Valentine, J.:
This was an action brought by the Pleasant. Hill Cemetery association against C. M. Hunt, for the recovery of $18. The defense of the defendant was, that he was the treasurer of the cemetery association, and entitled to the custody of its funds; and the only substantial question involved in the case or litigated in the court below is, and was, whether he was in fact such treasurer. Many minor and subordinate questions, however, are involved in this main and principal question. The case was tried by the court below without a jury, and upon the evidence introducd in the case the court made the following findings of fact and law, to wit:
*735 “findings of fact.
“ 1. The plaintiff is a cemetery corporation, duly organized under the laws of this state. The defendant was one of its charter members, and appointed its treasurer. He accepted such appointment, but never filed the oath or bond of office, but acted as such treasurer, and as such had in his hands at the time of the commencement of this suit the sum of $10.25 of the money of said plaintiff, which he refused to turn over to his successor, though demanded by him. His only excuse or claim for not doing so is, that his successor is not and was not legally elected. A formal order was also drawn on the defendant, signed by the president and the secretary, to pay over the money in his hands to his successor.
“ 2. Said plaintiff, as a corporation, duly adopted a constitution and by-laws soon after filing and receiving the charter, March 15,1880, and had its proper corps of officers duly acting. By said by-laws the annual election for officers was established on the second Friday of February each year, at the neighborhood school house, and further provided that a majority of members present should elect.
“3. That prior to the 2d Friday of February, 1881, by an understanding among the officers and other members, the hour of 4 o’clock p. m. was set for the meeting. That day was a very bad, stormy day. The then acting president of the corporation, Aaron Bobbins, started to go to the meeting. On his way he called on the acting secretary, G. M. Smith, to go along. Mr. Smith said it was so stormy no one would be there, and he would not go down; that the meeting better be adjourned to some good day when the members could get out. Bobbins said he would go down and see. He went to the said school house a few minutes after -4 p. M. No one was there, and he saw no one of the members anywhere, other than Smith, as aforesaid. It was stormy, cold, and there was no fire. Mr. Bobbins went into the house, and thought to himself that he would adjourn the meeting for one week, at the same hour, and to the post office and store about 75 yards from the school house. He then left. He called on the secretary, Smith, on his way home, and told him no one was there; that he had adjourned for one week, at the same hour, to the store, and for him, Smith, to notify the members. Bobbins also notified all members he saw.
“4. On the next Friday the adjourned meeting was had, at the said place and hour adjourned to. No-one went to the school house, save the said secretary Smith. He found no *736 •one there, and immediately returned to the post office. Less than a majority of the members of the association were present, but the meeting was held, the election of trustees and ■officers had in full — one Waters Chillson being appointed treasurer, as also elected trustee. The defendant, Hunt, was not present at the election. He came, but was too late. Said new set of trustees and officers duly qualified before commencing this suit, and each and all entered upon their respective duties as such, and have been acting up to this time — said Chillson being recognized as treasurer by all the trustees and officers, and by members and persons having business to do with that officer.
“5. The whole of said proceedings of election were fair .and reasonable, in which two factions- participated — one got beaten, and the other, won. No fraud is claimed, only irregularities. This defendant at first intended to acquiesce in it, but some began to think the meeting was not properly adjourned, or could not be adjourned — some that a majority of members should be present or no election should be had; and others, that persons voted that ought not to, and those were elected that ought not to have been. These suspicions, formed by old animosities, grew into big formed judgments, and the defendant was at length instructed, or at least advised, by some of the members not to give up his office. He then and has since refused to, and still holds all books and money of the office in his hands. Hence this law suit.
“6. That a record was then made by the then acting .secretary, Smith, of the adjournment of said annual meeting for one week, and of the meeting at that time, and the election of trustees and the appointment of officers.
“7. No provision was made by the constitution or bylaws as to what should be done in case the annual election should not be held on the said second Friday of February.
“8. The constitution and by-laws of plaintiff do not prescribe the duties of the different officers, nor have the duties of the treasurer been in any way specially defined. But the ■defendant purchased for the use of his office a very small pocket pass-book. It does not appear what, if any, entries have been made in it. Papers have been spoken of, but it does not appear what, if any, of these are in defendant’s hands. The charter, plat, deeds, blanks and record of proceedings seem to be in the hands of the secretary. There were but six lots sold while defendant was acting treasurer, and he received only $18 in all, while in office. The con *737 ■dition of the treasurer’s records, if any, and of the property, are known to the officers; and this said pass-book, therefore, is of but little if of any value to the association. I take it nothing else of records or papers have been or are now in his hands; none of the officers have any office, but do their business, I suppose, at their respective residences.”
“conclusions op law.
“1. Waters Chillson is the treasurer de jure of plaintiff corporation; if not de jure, he'is defacto treasurer. The board of trustees appoint the treasurer. In appointing Chill-son, they have, in effect, removed Hunt. There is but one board of trustees — it is at least a de facto board — and it is not for the defendant to try their title to office in this proceeding, which he does by saying they had no right to appoint his successor.
“2. The plaintiff is entitled to recover of defendant the said amount of money in his hands, $10.25.” ■
As before stated, the only substantial question involved in this case is, whether the defendant, C. M. Hunt, was treasurer of the cemetery association at the time this suit was commenced. The cemetery association was organized in February, 1880, and C. M. Hunt was one of the charter members, and one of the directors or trustees, and acted as such director or trustee, and also as treasurer of the association, from the time of its organization up to the time when this action was commenced. The plaintiff in this action, however, claims that Waters Chillson was elected treasurer of the association in the place of Hunt, on February 18,1881; and this action wás commenced to recover the money which Hunt held in his hands, as treasurer of the association, so that such money might be turned over to Waters Chillson, the supposed successor in office of the defendant, Hunt.
We do not think that the action can be maintained. A civil action in the nature of quo. warranto is the only proper remedy in cases of this kind. (Braidy v. Theritt, 17 Kas. 471; Hussey v. Hamilton, 5 Kas. 462, 470; Presbyterian Society v. Smithers, 12 Ohio St. 248; Eaton v. Harris, 42 Ala. 491; Duane v. McDonald, 41 Conn. 517; Gumberts v. The Adams *738 Express Co., 28 Ind: 181; Johns v. People, 25 Mich. 500.) Hunt was treasurer de facto, and until he delivered up his office to his successor was entitled to the custody of the funds of the association. Chillson was never the de facto treasurer of the association, and it is at least questionable whether he had any legal right to the office. His right or title to the office is founded upon a supposed election, held by the association on February 18,1881; but this was not the time fixed for the holding of such elections by the association. The regular time for holding such elections was on the second Friday of February, and that year on February 11, 1881. But it is claimed that this election of February 18,1881, was at an adjourned meeting of the regular annual meeting. But this-supposed adjournment was simply by Aaron Robbins, who-alone “thought to himself that he would adjourn the meeting for one week,” and to a different place than the one at which the election should be held, under the constitution and by-laws of the association. Mr. Robbins, although a charter member and director and president of the association, was not a lot-owner, and therefore it was at least questionable whether he was entitled to vote at that election or not, (Comp. Laws of 1879, p.235, §126;) and if not, could he adjourn the meeting to another time and to another place by just thinking of an adjournment?
The election was held on February 18,1881, but only two-lot-owners and four charter members, out of some six to ten lot-owners and six charter members, were present. No-general notice had been given to the members of the association of this adjourned meeting, and several of the members-had no knowledge or notice of the meeting until some time after it was held. One of those two lot-owners who were present at said meeting voted for Hunt, and the other probably voted for Chillson; but Chillson and the directors representing his side of the controversy were- declared elected. At the time of the election Chillson was not a lot-owner, nor a charter member, nor a member of the association in any form or manner whatever. He was a mere stranger to the as *739 sociation. After Chillson’s supposed election he demanded from Hunt the books, papers, moneys, etc., belonging to the treasurer’s office, but Hunt refused to deliver them to him. The president and secretary of the association also ordered Hunt to pay all money belonging to the association to Chillson. At the times when this demand and this order were made, Chillson had not taken any oath of office, or qualified for the office in any. other respect whatever. On the morning before this suit was commenced, however, Chill-son selected a lot, with a view to purchasing it of the association, and further qualified by taking a verbal oath, but did not “subscribe” to any oath or affirmation: was this sufficient? (Comp. Laws of 1879, p. 569, § 6.) Nor did any of the directors or trustees who were declared to be elected on February 18, 1881, qualify until the morning before this suit was commenced; and then they qualified in the same manner that Chillson did. After qualifying, they (Chillson and said directors or trustees) commenced this action; but no further demand for the moneys, books or papers held by the defendant, as treasurer of the association, was made until after the suit was commenced. The officers declared to be elected on February 18,1881’, recognized Chillson as the duly-elected and rightful treasurer of the association. But on the other hand, a majority of the lot-owners of the association at all times recognized Hunt as .the regular and legal treasurer. of the association.
It will be seen from the foregoing, that it is at least questionable whether Chillson was entitled to the office of treasurer of the association, and he certainly never had the possession of the office; but Hunt, who had been acting as treasurer' of such association for the year previous to said supposed election, and up to the commencement of this action, was still in the possession of the office, and claiming to be rightfully in possession thereof, and legally entitled to hold the same. And he was certainly holding it under color of right. He was no intruder. For an entire year he had been recog *740 nized by all parties as the rightful treasurer, and he was still so recognized by a majority of the lot-owners.
We think the plaintiff has mistaken its remedy. The action should be one in the nature of quo warranto, and not an action to recover money. If the defendant should be ousted from the office, he would then undoubtedly deliver all property in his hands belonging to the association to his successor in office. This action did not recognize the defendant as treasurer of the association; it was not an action upon any warrant or order drawn upon him as treasurer; but the action was founded upon the theory, absolutely and entirely, that he was not treasurer.
Some of the facts which we have stated are not found in the findings of the court below, but they are all clearly shown by the evidence introduced on the trial of the case. But we think the findings of the court below are sufficient of themselves to require a reversal of the judgment thereon, for the findings alone sufficiently show that the real contest in this case was, whether the defendant below was entitled to hold the office of treasurer of the cemetery association. If the defendant’s successor had been elected and qualified, and had obtained the possession of the office, and if the money sued for had then been demanded of the defendant, then if the defendant had refused to deliver it to his successor, we suppose the action for its recovery might be maintained; but if these things have not transpired, (and they have not,) then we suppose the action cannot be maintained. As long as the defendant is a de facto officer, claiming to be rightfully holding the office, we think the action cannot be maintained.
The judgment of the court below will be reversed, and the cause remanded with the order that judgment be rendered in favor of the defendant,- and against the plaintiff for costs.
Hobton, C. J., concurring.